# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CELS ENTERPRISES, INC., | : | _____ CV _____ |
| Plaintiff, | : | |
| v. | : | |
| CL INDUSTRIES, LLC,  M.I.S.S. SPORTWEAR, INC. and ALLAN FALLAS, | : | **VERIFIED COMPLAINT** |
| | : | |
| Defendants. | : | |

Plaintiff, CELS Enterprises, Inc., by its attorneys, Cole, Schotz, Meisel, Forman & Leonard, by way of complaint against the defendants, hereby says:

## INTRODUCTION

1.  This is an action seeking injunctive and monetary relief as a result of defendants' violations of the Lanham Act as well as for causes of action under state and common law and for defendants' many material breaches of a Licensing Agreement between plaintiff and defendants that granted defendants the right to use plaintiff's "Chinese Laundry" trademark.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff is CELS Enterprises, Inc. ("CELS"), a corporation having a place of business at 3485 South La Cienega Blvd., Los Angeles, California. CELS is a woman's fashion footwear import and distribution company.

5. Defendant CL Industries, LLC ("CL") designs, manufactures, advertises, promotes, sells and distributes woman's fashions and has a place of business at 1384 Broadway, New York, New York. CL is a party to the License Agreement that is integral to this case.

6. Defendant M.I.S.S. Sportswear, Inc. ("M.I.S.S. Sportswear") is a parent or otherwise related entity of defendant CL and also has a place of business at 1384 Broadway, New York, New York. M.I.S.S. Sportswear was materially involved in defendant CL's actions as alleged herein. For instance, the License Agreement required plaintiff to send notices to CL in care of M.I.S.S. Sportswear, M.I.S.S. Sportswear paid monies owed under the License Agreement and correspondences regarding the License Agreement were sent on M.I.S.S. Sportswear stationary and faxed from the M.I.S.S. Sportswear fax number.

7. Defendant Allan Fallas is President of CL and M.I.S.S. Sportswear (hereinafter collectively referred to as the "defendants") and is an owner of both entities. Fallas was the moving, active and conscious force behind defendants' actions as alleged herein. Further, Fallas expressly and intentionally directed and participated in the acts alleged herein and had a direct financial interest in use of the trademark central to this case.

2

## FACTUAL BACKGROUND

8.  Plaintiff CELS is the owner of the applications and registrations for the trademark "Chinese Laundry" (the "trademark") and has the right to grant licenses in connection with the manufacture, advertising, promotion, sale and distribution of products bearing the trademark.

9.  On or about June 26, 2003, plaintiff and defendant CL entered into a License Agreement (the "License Agreement").  Defendant Fallas executed the License Agreement on behalf of CL.  In the License Agreement, CL recognized that plaintiff's trademarks, including the Chinese Laundry trademark, "have acquired notoriety and goodwill" and that they "possess a special, unique, and extraordinary character...."

10.  The License Agreement generally grants the Licensee (CL) the exclusive right and obligation to use the trademark in connection with the design, manufacture, advertisement, promotion, sale and distribution of "Licensed Products" – which are defined as all Women's Sportswear, Active Wear and Occasion Dresses – within the United States and its territories (including Puerto Rico and PX stores worldwide), Canada and Mexico until December 31, 2006.

11.  The Licensee (CL), in exchange for the license grant discussed above, agreed to fulfill various requirements and abide by various conditions that were material to the Licensor (CELS) and to the License Agreement.

3

12. Defendants, however, almost from the inception of the License Agreement, either failed to perform or untimely performed their obligations thereunder.

13. Defendants committed material breaches of material terms and conditions of the License Agreement as set forth below. Plaintiff gave defendants timely notice in writing and/or otherwise of such breaches. Nonetheless, defendants failed to cure such breaches.

14. The License Agreement was terminated on or before December 1, 2004.

15. By letter dated December 1, 2004, plaintiff advised that its reasons for terminating the agreement included that defendants "have not been able to bring the licensed products to a level of marketability as you had lead us to believe," that defendants failed "to fulfill its obligations bringing forth an Occasion Dresses collection," that "sales have been disappointing to say the least," that the "majority of its sales to discounters have negatively affected the good name and reputation of Chinese Laundry – which has been detrimental to our business and that of our other licensees," that defendants "failed to provide substantial advertising and promotion for the Licensed Products" and "your constant disregard for our repeated requests for either clarification or additional information on your reports or financial statements were a clear sign that your company is not at a level in which a licensee of Chinese Laundry products should perform."

4

16. Through the December 1, 2004, letter referenced above, plaintiff suggested memorializing the termination and formalizing a "wind-up" of relations between the parties through an agreement, but warned that if defendants did not agree, plaintiff "will have no other alternative than to request the courts for an injunction to immediately prevent you from using the Chinese Laundry Trademark" as well as damages and fees.

17. Defendants did not sign a termination agreement with plaintiff.

18. By email dated and sent January 18, 2005, counsel for plaintiff advised counsel for the defendants that plaintiff demanded defendants to immediately cease and desist from using the trademark and directed that defendants "(1) acknowledge the Licensing Agreement is terminated; (2) immediately cease filling orders and selling inventory using our client's trademark; and (3) make arrangement to pay all amounts due under the Licensing Agreement." The email also warned that "ANY CONTINUED VIOLATIONS WILL BE DEEMED WILLFUL, INTENTIONAL, [and] MALICIOUS" and would  subject defendants to further liability.  Counsel for the defendants acknowledged receipt of the January 18, 2005, email but defendants have neither responded substantively nor given any indication whatsoever they would comply with the directions set forth in the email.

## COUNT I

### (Breach of Contract  - Section 2.5(a) of the License Agreement)

19.  Plaintiff repeats the allegations contained in Paragraphs 1 through 18 as if fully set forth herein.

20.  Section 2.5(a) of the License Agreement requires the Licensee to "use its best efforts to exploit the rights and license herein granted …. [and] [s]uch exploitation shall include, but not be limited to, production, promotion, sale and distribution of Licensed Products bearing the Licensed Marks to the maximum practicable extent."

21.  The "Licensed Products" referred to in section 2.5(a) are defined in section 1.3 of the License Agreement as all "Women's Sportswear, Active Wear [and] Occasions Dresses…."

22.  Defendants never produced, promoted, sold or distributed an Active Wear collection bearing the licensed mark and never sold or distributed an Occasions Dresses collection bearing the licensed mark.

23.  As a result, defendants breached section 2.5(a) of the License Agreement.

24.  Defendants' breach of section 2.5(a) resulted in injury to plaintiff by, inter alia, reducing the amount of earned royalties plaintiff should have realized and by negating further notoriety and goodwill of the trademark.

## COUNT II

### (Breach of Contract - Section 5.2 of the License Agreement)

6

25.  Plaintiff repeats the allegations contained in Paragraphs 1 through 24 as if fully set forth herein.

26.  Section 5.2 of the License Agreement requires defendants to pay plaintiff a specified guaranteed minimum royalty (GMR) in quarterly installments during the term of the Agreement.

27.  Section 5.2 of the License Agreement required defendants to pay plaintiff a GMR quarterly installment of $45,000 by January 1, 2005.

28.  Defendants have failed to pay plaintiff the GMR quarterly installment of $45,000 that was due on January 1, 2005 and, as a result, have breached section 5.2.

29.  Section 9.2(b) of the License Agreement provides that if the Agreement is terminated "then, without prejudice to any other rights and remedies which LICENSOR may have against LICENSEE, the unpaid balance of the GMR for the current, shall, as liquidated damages and not as a penalty, accelerate and become immediately due and payable to LICENSOR, it being understood that the rights and remedies of LICENSOR hereunder shall be cumulative."

30.  Pursuant to section 5.2, the current balance of GMR due for the remainder of the minimum term of the License Agreement (until December 31, 2006), is **$450,000** ($180,000 for Contract Year 2 (2005) and $270,000 for Contract Year 3 (2006)).

7

31. Pursuant to sections 5.2 and 9.2(b), defendants owe plaintiff a GRM of $450,000.

## COUNT III

### (Breach of Contract - Sections 5.3 and 5.4 of the License Agreement)

32. Plaintiff repeats the allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

33. Section 5.4 of the License Agreement requires defendants to submit within fifteen days after each calendar quarter (a) a statement of the gross and net sales of the Licensed Products during the preceding quarter (including a breakdown of sales by SKU or style that is certified by licensee's Chief Financial Officer), (b) a breakdown of sales by account/customer during the preceding quarter, and (c) a statement as to the calculation of the GMR and Earned Royalty, signed and certified by licensee's Chief Financial Officer.

34. Defendants have breached section 5.4 of the License Agreement in that they have failed to make any of the submissions to plaintiff required by that section regarding the quarter ending December 31, 2004.

35. Section 5.3 of the License Agreement requires defendants to remit to plaintiff an Earned Royalty due (if any) for a quarterly period within fifteen days following the end of each quarterly period.

8

36.  Defendants breached section 5.3 of the License Agreement if they failed to remit to plaintiff an Earned Royalty that was due regarding the quarter ending December 31, 2004.  Of course, insofar as defendants have failed to provide plaintiff with the statements and other records required by section 5.4, plaintiff is unable to determine whether a breach of section 5.3 has occurred.

## COUNT IV

### (Breach of Contract - Section 4.4(a) of the License Agreement)

37.  Plaintiff repeats the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38.  In section 4.2 of the License Agreement, defendants explicitly agreed that the Licensed Products "shall meet the high standards of quality, workmanship, material, design, size, color and style established by LICENSOR."

39.  Section 4.4(a) of the License Agreement provides that to ensure conformance with section 4.2, defendants shall send to plaintiff samples of styles and materials requested by plaintiff within seven days of such a request by plaintiff.

40.  By letter dated October 21, 2004, plaintiff requested defendants "to ship us a sample of each style of the Licensed Products' current line as well as all Material that bear our Chinese Laundry Trademark.  We would appreciate your submission within seven (7) days as outlined in our License Agreement."

9

41.  Defendants breached section 4.4(a) of the License Agreement insofar as they have heretofore failed to send the samples of the styles and materials requested on October 21, 2004.

42.  As a result of defendants' breach of section 4.4(a), plaintiff has been foreclosed from ensuring the Licensed Products meet its high standards of quality, workmanship, material, design, size, color and style.

## COUNT V

### (Breach of Contract - Section 6.1 of the License Agreement)

43.  Plaintiff repeats the allegations contained in Paragraphs 1 through 42 as if fully set forth herein.

44.  Section 6.1 of the License Agreement requires defendants to "spend at least an amount equal to three (3%) percent of its Net Sales for the Contract Year ("the Advertising Obligation") for trade and consumer advertising and cooperative advertising with Authorized Retailers...." Section 6.1 also provides that defendants shall give plaintiff written notification of all advertising and shall submit copies of advertisements to plaintiff within ten days after placement of the advertisement.

45  By letter dated October 21, 2004, plaintiff notified defendants that their expenditures for advertising were insufficient as of that date by $3,964 and that

10

defendants had failed to provide necessary details about their advertisements. Further, the letter requested a detailed report of defendants' advertising.

46. Defendants have since failed to provide plaintiff with any further written notifications of its advertising and have failed to submit copies of its advertisements to plaintiff.

47. Defendants breached section 6.1 of the License Agreement in that they have failed to provide plaintiff with the required notifications about its advertising the Licensed Products and have failed to submit copies of its advertisements to plaintiff.

48. Defendants breached section 6.1 of the License Agreement if they failed to spend at least an amount equal to three percent of its Net Sales for the Contract Year ending December 31, 2004, for trade and consumer advertising and cooperative advertising with Authorized Retailers. Of course, insofar as defendants have failed to provide plaintiff with the notifications required by section 6.1, plaintiff is unable to determine whether a breach of section 6.1 (regarding required expenditures on advertising) has occurred.

49. Pursuant to the last sentence of section 6.1, defendants are required to pay plaintiff any unexpended portion of the Advertising Obligation.

50. Defendants' breach of section 6.1 resulted in injury to plaintiff by, inter alia, reducing the amount of earned royalties plaintiff should have realized and by negating further notoriety and goodwill of the trademark.

11

## COUNT VI

### (Breach of Contract - Section 6.3 of the License Agreement)

51.  Plaintiff repeats the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

52.  Section 6.3 of the License Agreement provides that if plaintiff "participates in any trade shows, including without limitation, the MAGIC," then upon written notice from plaintiff, defendants shall be required to participate in such show(s) and shall be required to contribute to plaintiff, within ten days after a request by plaintiff, defendants' "pro rata share of all costs incurred and expenses associated with the trade show, all costs in connection with the rental of such space, the construction of the booths, including all electronic installations and/or rentals, and the costs of all live or recorded fashion shows presented at the trade show."

53.  Pursuant to section 6.3, plaintiff timely notified defendants that it would be participating in the MAGIC Show in February, 2005.

54.  Defendants breached and will breach section 6.3 by failing to reserve a booth for the MAGIC Show and thereby by failing to participate in the MAGIC Show.

55.  Defendants' breach of section 6.3 resulted in injury to plaintiff by, inter alia, reducing the amount of earned royalties plaintiff should have realized and by negating further notoriety and goodwill of the trademark.

41023/0001-1376141v1

56. Defendants owe plaintiff their pro rata contribution pursuant to section 6.3.

## COUNT VII

### (Breach of Contract - Section 2.5(b) of the License Agreement)

57. Plaintiff repeats the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58. Section 2.5(b) of the License Agreement provides that if defendants "directly of indirectly take any action or actions which negatively affect the good name, goodwill or reputation associated with the Licensed Marks or LICENSOR, LICENSOR shall give written notice to the LICENSEE setting forth such action or actions and should LICENSEE continue to take such action, LICENSOR may deem such repeated action a breach by LICENSEE of this Agreement."

59. By letter dated October 21, 2004, plaintiff notified defendants that actions they were taking were negatively affecting the good name and reputation of the Licensed Marks. In particular, the October 21, 2004, letter stated: "we became very concerned with the fact that over 86% of the sales were shipped to discounters....Such actions negatively affect the good name and reputation of Chinese Laundry Trademark. We expect you to take immediate measures to restore and maintain our image by selling Chinese Laundry products to a similar level of customers such as ones on the enclosed list. Discounters are for off-price merchandise properly liquidated at the end of each season."

13

60. Upon information and belief, after October 21, 2004, and in spite of plaintiff's admonition, defendants continued to sell a high percentage of the Licensed Products to discounters.

61. Defendants breached section 2.5(b) of the License Agreement by continuing actions which plaintiff notified defendants negatively affects or impacts the good name, goodwill and reputation of the Licensed Marks.

## COUNT VII

### (Violation of 15 U.S.C. § 1125(a) )

62. Plaintiff repeats the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

63. The License Agreement between the parties was terminated due to defendants' breaches of the agreement and plaintiff advised the defendants to immediately cease and desist from using the Chinese Laundry trademark.

64. Upon information and belief, the defendants thereafter continued to use and/or intend to use plaintiff's Chinese Laundry trademark without the authority, permission or consent of plaintiff.

65. Defendants have used, are using and/or will use plaintiff trademark in interstate or foreign commerce in connection with the design, manufacture, advertising, promotion, sale and distribution of the Licensed Products.

14

66. Defendants' use of the Chinese Laundry trademark without the authority, permission or consent of plaintiff is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection , or association of defendants with the plaintiff, and/or as to the origin, sponsorship, or approval of defendant's goods, services or commercial activities by the plaintiff, in violation of 15 U.S.C. § 1125(a).

67. Defendants' foregoing actions were and are being done knowingly and intentionally.

68. Defendants' foregoing actions have caused and are continuing to cause irreparable injury to the goodwill and reputation of plaintiff and its Chinese Laundry trademark as well as damages.

## COUNT VIII

### (Violation of 15 U.S.C. § 1114(1))

69. Plaintiff  repeats the allegations contained in Paragraphs 1 through 68 as if fully set forth herein.

70. The License Agreement between the parties was terminated due to defendants' breaches of the agreement and plaintiff advised the defendants to immediately cease and desist from using the Chinese Laundry trademark.

41923/0001-1376141v1

71.  Upon information and belief, the defendants thereafter continued to use and/or intend to use plaintiff's Chinese Laundry trademark without the authority, permission or consent of plaintiff.

72.  Defendants, without the authority, permission or consent of plaintiff, have used, are using and/or will use in interstate or foreign commerce reproductions, counterfeits, copies, or colorable imitations of plaintiff's trademark in connection in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114.

73.  Defendants' foregoing actions were and are being done knowingly and intentionally.

74.  Defendants' foregoing actions have caused and are continuing to cause irreparable injury to the goodwill and reputation of plaintiff and its Chinese Laundry trademark as well as damages.

## COUNT IX

### (Common Law Trademark Infringement)

75.  Plaintiff repeats the allegations contained in Paragraphs 1 through 74 as if fully set forth herein.

16

76.  Plaintiff owns and enjoys common law rights in this district and throughout the United States in and to the Chinese Laundry mark.

77.  Defendants, without the authority, permission or consent of plaintiff, have used, are using and/or will use in interstate or foreign commerce reproductions, counterfeits, copies, or colorable imitations of plaintiff's trademark in connection in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

78.  Defendants, without the authority, permission or consent of plaintiff, have used, are using and/or will use in interstate or foreign commerce reproductions, counterfeits, copies, or colorable imitations of plaintiff's trademark in connection in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

79.  Defendants' foregoing actions were and are being done knowingly and intentionally.

80.  Defendants' foregoing actions have caused and are continuing to cause irreparable injury to the goodwill and reputation of plaintiff and its Chinese Laundry trademark as well as damages.

## COUNT X

17

**(Unfair Competition)**

81. Plaintiff repeats the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

82. Defendants, without the authority, permission or consent of plaintiff, have used, are using and/or will use in interstate or foreign commerce reproductions, counterfeits, copies, or colorable imitations of plaintiff's trademark in connection in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

83. Defendants, without the authority, permission or consent of plaintiff, have used, are using and/or will use in interstate or foreign commerce reproductions, counterfeits, copies, or colorable imitations of plaintiff's trademark in connection in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

84. Defendants' foregoing actions were and are being done knowingly and intentionally and in bad faith.

85. Defendants' foregoing actions have caused and are continuing to cause irreparable injury to the goodwill and reputation of plaintiff and its Chinese Laundry trademark as well as damages.

18

## COUNT XI

### (Unjust Enrichment)

86. Plaintiff repeats the allegations contained in Paragraphs 1 through 85 as if fully set forth herein.

87. In committing the acts described above, defendants have been unjustly enriched at the expense of plaintiff, and the circumstances are such that in equity and good conscience the money should be returned to the plaintiff.

88. As a result, plaintiff is entitled to recover the amount of unjust enrichment.

## RELIEF REQUESTED

**WHEREFORE,** plaintiff CELS Enterprises, Inc., requests that the Court:

A. Issue injunctive relief pursuant to 15 U.S.C. § 1116 and the Court's equitable powers, including, but not limited to:

> (i) enjoining defendants from using or displaying plaintiff's
> trademarks or service marks, including, but not limited to, the
> Chinese Laundry trademark, or any confusingly similar
> trademarks, service marks, logos, symbols or trade dress in
> connection with the advertising, manufacture, production,
> distribution, display or sale of any product or service;

19

(ii) enjoining defendants from making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that defendants or any of their products are in any manner, directly or indirectly associated, affiliated, or connected with, or licensed, sponsored, authorized or approved by plaintiff;

(iii) compelling defendants to deliver to plaintiff all labels, hangtags, cartons, containers, wrappers, packages and other inner and outer packaging materials, fixtures, displays, signage, artwork, printing, advertising, stationary and sales, marketing and promotional material bearing plaintiff's trademarks or service marks, including, but not limited to, the Chinese Laundry trademark, or any confusingly similar trademarks, service marks, logos, symbols or trade dress in their possession or control; and

(iv) compelling defendants to comply with their obligations under the Licensing Agreement.

B.  Issue an Order pursuant to 15 U.S.C. § 1117:

i.  granting judgment in favor of plaintiff in the amount of defendants' profits;

ii.  granting plaintiff damages;

20

iii. granting plaintiff's costs and reasonable attorney's fees;

iv. granting judgment in favor of plaintiff for treble the greater of defendants profits or plaintiff's damages;

v. granting prejudgment interest.

C. Issue an Order pursuant to plaintiff's non-Lanham Act causes of action granting plaintiff damages, including liquidated damages and interest;

D. Issue an Order awarding plaintiff the costs and attorneys fees of bringing this action, as well as other relief the Court deems just and proper.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Plaintiff CELS
Enterprises, Inc.

By: _____
MICHAEL N. MOREA (MM 4846)
767 Third Avenue-20th Floor
New York, New York 10017
(212) 752-0110

Dated: January     , 2005

21

## VERIFICATION

**ZAK BENEDON**, of full age, hereby declares as follows:

1.  I am President of Licensing for plaintiff CELS Enterprises, Inc. and am familiar with the facts of the above-referenced matter.

2.  The allegations contained in the attached Complaint are true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

ZAK BENEDON

Dated:  January 3 , 2005